Walton **BEACHAM** and Deborah Beacham, Plaintiffs,

v.

**MACMILLAN, INC.**, Defendant.

No. IP 90–1461 C.

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 3, 1993.

---

Harold T. Daniel, Jr., Laurie Webb Daniel, Webb & Daniel, Atlanta, GA, Roger D. Erwin, McHale Cook & Welch, Indianapolis, IN, for plaintiffs.

Charles F. Miller, Jr., Stewart Due Miller & Pugh, Indianapolis, IN, Anthony M. Radice, Karen L. Hagberg, Rebecca Westerlund French, Morrison & Foerster, New York City, for defendant.

## ENTRY

BARKER, District Judge.

Defendant Macmillan, Inc. ("Macmillan") moves for summary judgment on all three counts of plaintiffs Walton and Deborah Beacham's ("Beachams") Complaint. For the reasons stated below, we deny Macmillan's motion for summary judgment as to part of Count I and grant Macmillan's motion as to Counts II, III, and part of Count I.

## BACKGROUND

The Beachams are the authors of a book titled *Using WordPerfect.* Macmillan is a New York book publishing corporation. Que Corporation ("Que") is a publishing company located in Carmel, Indiana, that Macmillan acquired. On May 30, 1984, the Beachams entered into a publishing contract with Que for the manuscript *Using WordPerfect,* designed for use with the 3.0 version of the WordPerfect software. The relevant provisions of the contract are as follows:

1. *GRANT OF RIGHTS*

The AUTHORS hereby grant to the PUBLISHER and its successors, representatives and assigns an exclusive right to print, reproduce, record, publish and sell the manuscript *Using WordPerfect* and associated software, throughout the world, together with all rights to transfer the manuscript from one media to another, and all rights of digest, abridgment, condensation, selection, anthology, quotation, book club reprint (including microfilm) edition through another publisher, second serialization, syndication, advertising, novelty or similar commercial use of the work or material based on the work, mechanical rendition and/or recording and foreign language book publication, first serialization, motion picture, dramatic, radio, television, and any other rights now existing or that may come into existence. The AUTHORS also grant the right for the PUBLISHER to use the AUTHORS' names with regard to the manuscript. Such rights endure through the full term of the copyright and all renewals thereof.

3. *COPYRIGHT*

The AUTHORS hereby assign all rights pursuant to the copyright to the PUBLISHER.

10. *ROYALTY*

The PUBLISHER will pay the AUTHORS a royalty, computed on PUBLISHER'S net selling price on all copies actually sold, and for which payment is received by PUBLISHER as follows:

\* \* \* \* \* \*

(2) For the purpose of computing royalties, sales of revised editions of said work shall be considered as additional sales of the first edition of said work.

15. *FUNCTIONAL AND SPECIFICATION WARRANTY*

PUBLISHER shall have the right to edit, revise and produce or provide additional or support materials as necessary ... In the event the book is republished, in a new or revised edition, the AUTHORS will, if necessary, edit, alter or update the manuscript, without charge therefore, if requested by PUBLISHER. If for any reason the AUTHORS do not revise the work, the PUBLISHER may procure some other competent person to revise the work and supply new matter and may deduct the percentage or royalty that must be paid or the expense of it from royalty first accruing on the sale of the first revised edition. The PUBLISHER may, if it so elects, give such person authorship credit.

Que published three editions of *Using WordPerfect* between 1985 and 1987 and paid the Beachams royalties on the sales of each of these editions. In April 1985, Que published *Using WordPerfect* and credited the Beachams as authors of the book. With the Beachams' approval, Que employed a writer, Janet Crider, to revise *Using WordPerfect* for versions 4.0 and 4.1 of WordPerfect and then published *Using WordPerfect (Revised Edition)* in December 1985. Que deducted the cost of Crider's revisions from the Beachams' royalties under ¶ 15 of the contract and gave the Beachams authorship credit for the book.

In late 1986, Que decided to publish another revision based on WordPerfect 4.2 and asked the Beachams for their ideas regarding the revision. Mr. Beacham suggested a feature called "At A Glance," which would summarize the basics in a nutshell. *See* W. Beacham Aff., at ¶ 11. The parties agreed that Janet Crider would again revise the book at a cost of $500–$1000, which would be deducted from the Beachams' royalties. *Id.*, at ¶ 12.

In early 1987, Macmillan, Inc. acquired Que Corporation and decided to create a new edition of *Using WordPerfect*. Without consulting the Beachams, Macmillan employed a writer named Ron Person to revise *Using WordPerfect* instead of Janet Crider. Person substantially reorganized and rewrote the original book and added a "Quick Start"

feature which was similar to the "At A Glance" feature Mr. Beacham had suggested when Que had asked for his ideas. Que published *Using WordPerfect (Third Edition)* in April 1987. Although the cost of Person's revisions amounted to $8,000, the Beachams negotiated with Richard Summe and Scott Flanders of Que Corporation to deduct only $1,000 from the Beachams' royalties for Person's work. In a letter dated June 29, 1987, Richard Summe informed the Beachams that Que had decided to suspend work with them on future titles and revisions. Macmillan did pay the Beachams royalties on *Using WordPerfect (Third Edition)*.

In early 1988, WordPerfect introduced a new version of its software known as Word Perfect 5.0. In February 25, 1988, the Que management decided to publish a book for WordPerfect 5.0 without using the Beachams as the authors. Que told the team of writers who contributed material to *Using WordPerfect 5* not to lift text from *Using WordPerfect (Third Edition)*. Que hired Charles Stewart and a team of twelve authors to write *Using WordPerfect 5* and published it in June 1988. When Macmillan did not pay the Beachams any royalties on the sales of *Using WordPerfect 5*, the Beachams brought suit.

The parties dispute whether *Using WordPerfect 5* constitutes a revision of *Using WordPerfect* or is an entirely new book. The Beachams' Complaint states three counts. Count I alleges that Que breached its contract with the Beachams by refusing to pay the Beachams royalties on the sales of *Using WordPerfect 5*. Count II alleges that Macmillan's copying of the nonfunctional features of the trade dress, trade marks and service marks, and organization and content of *Using WordPerfect* in its publication of *Using WordPerfect 5* violates the Lanham Act, 15 U.S.C. § 1125(a). Count III alleges that Macmillan unfairly competed against the Beachams by "passing off" *Using WordPerfect 5* as a revised edition of the earlier books and that Macmillan engaged in "reverse palming off" by failing to name the Beachams as authors of *Using WordPerfect 5*.

The Beachams claim that their lost royalties amounted to at least $2 million and that the denial of their authorship credit for *Us-*

ing *WordPerfect 5* resulted in a significant loss of their recognition and prestige in the publishing industry. *See* W. Beacham, Aff. ¶ 19. Que maintains that the Beachams are not entitled to any royalties on sales of *Using WordPerfect 5* because they did not write any part of the book.

## DISCUSSION

### SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. Proc. 56(c). In passing on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or determine the truth of the matter, but it is instead to decide whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case." *Celetox Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If doubts remain as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wilson v. Williams,* 997 F.2d 348, 350 (7th Cir.1993); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

## I. BREACH OF CONTRACT

The Beachams claim that because *Using WordPerfect 5* is a "revised edition" of *Using WordPerfect,* they are entitled to royalties under paragraph ten of the contract which states that "[f]or the purpose of computing royalties, sales of revised editions of said work shall be considered as additional sales of the first edition of said work." Macmillan contends that *Using WordPerfect 5* is not a "revised edition" of *Using WordPerfect* because the Beachams did not write any part of

*Using WordPerfect 5* and because *Using WordPerfect 5* does not contain any of the Beachams' original work.

■ We find that a genuine issue of material fact exists regarding whether *Using WordPerfect 5* constitutes a "revised edition" of *Using WordPerfect* or is an entirely new book. Even if we accept Macmillan's contention that "the only similarities between *Using WordPerfect* and *Using WordPerfect 5* are the organization, vocabulary, style, chapter headings, and grouping of software function explanations," these may be significant enough for a jury to deem the new book a revision instead of a new creation. *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment, at 16. Because "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," we decline to weigh on summary judgment all the evidence presented regarding whether *WordPerfect 5* is an entirely new book or incorporates significant features of the Beachams' original work. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Macmillan maintains, in the alternative, that even if *Using WordPerfect 5* is a "revised edition," the contract gives the Beachams the right to royalties only on one edition after the last edition to which the Beachams contributed revision material. Macmillan relies on ¶ 15 of the contract which states:

> If for any reason the AUTHORS do not revise the work, the PUBLISHER may procure some other competent person to revise the work and supply the new matter and may deduct the percentage or royalty that must be paid or the expense of it from royalty **first accruing on the sale of the first revised edition.** The PUBLISHER may, if it so elects, give such person authorship credit. (emphasis added).

Contract ¶ 15. Macmillan claims that ¶ 15 suggests that the publisher will pay original authors royalties only on the sales of the "first revised edition" as to which the revi-

sions are written by someone else. Under this interpretation, because *Using WordPerfect (Third Edition)* was the "first revised edition" to which the Beachams contributed no revisions, the Beachams are not entitled to royalties from any subsequent revision.

We find that Macmillan's interpretation is not supported by ¶ 10 of the contract which provides:

> For the purpose of computing royalties, sales of **revised editions** of said work shall be considered as additional sales of the first edition of said work. (emphasis added).

Contract ¶ 10. The plain language of the contract makes no distinction between revised editions written by the Beachams and those authored by others. It suggests that if *WordPerfect 5* is in fact a "revised edition," the Beachams would be entitled to royalties. Because ¶ 15 does not nullify the clear language of ¶ 10, we find that a genuine issue of material fact exists regarding whether *Using WordPerfect 5* is a revised edition of *Using WordPerfect* and deny Macmillan's motion for summary judgment as to the breach of contract claim of Count I of the Complaint.

## II. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ The Beachams claim that Macmillan breached an implied covenant of good faith and fair dealing by misappropriating the work of *Using WordPerfect* to avoid paying royalties to the Beachams. Indiana has not adopted the Restatement (Second) of Contracts' provision that, "[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *See Hamlin v. Steward,* 622 N.E.2d 535, 540 (Ind.App. 1 Dist.1993). In *First Federal Savings Bank of Indiana v. Key Markets, Inc.,* 559 N.E.2d 600, 604 (Ind. 1990), the Supreme Court of Indiana found that "[i]t is not the province of courts to require a party acting pursuant to such a contract to be 'reasonable,' 'fair,' or show 'good faith' cooperation. Such an assessment would go beyond the bounds of judicial duty

and responsibility." The court concluded that "[i]t is only where the intentions of the parties cannot be readily ascertained because of ambiguity or inconsistency in the terms of a contract or in relation to extrinsic evidence that a court may have to presume the parties were acting reasonably and in good faith in entering into the contract." *Id.*

■ In this case, the contract is unambiguous regarding the parties' intentions that royalties should be paid on "revised editions" (¶ 10). What is in dispute is whether *Using WordPerfect 5* is a "revised edition" under the contract. We will not read an implied duty of good faith and fair dealing into a contract where the parties' intentions are clear. Moreover, Indiana courts have only implied a duty of good faith and fair dealing against insurance companies and fiduciaries, neither of which applies to Macmillan. *See First Federal Savings,* 559 N.E.2d at 604; *Ford Motor Credit Co. v. Garner,* 688 F.Supp. 435, 442–43 (N.D.Ind.1988). Accordingly, we grant Macmillan's motion for summary judgment as to the Beachams' claim of breach of an implied covenant of good faith and fair dealing.

## III. LANHAM ACT CLAIM

■ The Beachams argue that Macmillan's publication of *Using WordPerfect 5* violated section 43 of the Lanham Act because Macmillan allegedly copied the trade dress[1], trade marks, service marks, and organization and content of *Using WordPerfect.*

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) provides:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation or origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or represen-

---

1. "Trade dress refers to the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or

even particular sales techniques." *Computer Care v. Service Systems Enterprises, Inc.,* 982 F.2d 1063 (7th Cir.1992).

tation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.[2]

■■■ In order to state a claim pursuant to 15 U.S.C. § 1125(a), the Beachams must show (1) that they have a protected trademark or trade dress and (2) that the relevant group of buyers is likely to confuse the alleged infringer's products or services with those of plaintiff. *See Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir.1990).[3]

■■■ The threshold question is whether the Beachams own a protectible trademark or trade dress. Both Que and the Beachams claim to have acquired a protectible trademark in *Using WordPerfect*. In *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 100, 39 S.Ct. 48, 51, 63 L.Ed. 141 (1918), the Supreme Court held that as between conflicting claimants to the right to use the same mark, the general rule is that "priority of appropriation determines the question." *See also Mechanical Plastics Corp. v. Titan Technologies, Inc.*, 823 F.Supp. 1137, 1143 (S.D.N.Y.1993). To appropriate a trademark, one must use it in commerce. *See In*

*re Trade–Mark Cases*, 100 U.S. (10 Otto) 82, 25 L.Ed. 550 (1879); J. McCarthy, *Trademarks and Unfair Competition* § 16:1, at 720 (2d Ed.1984). We find that the trademark and trade dress rights in this case belong to Macmillan because it first used the trademark in commerce through its publication, distribution, advertising and marketing of *Using WordPerfect*. Moreover, we have found no authority suggesting that an author can assert the right to the trade dress or trademark against a publisher who has already claimed ownership of the trademark. Because the trademark and trade dress of *Using WordPerfect* belong to Macmillan, the Beachams' Lanham Act claim is deficient. *See Munters Corp. v. Matsui America, Inc.*, 909 F.2d 250 (7th Cir.), *cert. denied*, 498 U.S. 1016, 111 S.Ct. 591, 112 L.Ed.2d 595 (1990). We find no material facts in controversy that the Beachams have not shown that they own a protectible trademark or trade dress in *Using WordPerfect* and grant Macmillan's summary judgment motion on Count II of the Beachams' complaint.[4]

## IV. UNFAIR COMPETITION CLAIMS

### A. Passing Off Claim

■■■ The Beachams claim that Macmillan intentionally passed off *Using WordPerfect 5* and *Using WordPerfect 5.1* as revisions of the Beachams' *Using WordPerfect* to trade on the goodwill of the original book without

---

2. In 1988, § 1125(a)(1) was amended to read: Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

This amendment would apply to events occurring after November 16, 1989, the effective date.

3. For a plaintiff to prove trade dress infringement, he must establish that: 1) his trade dress is "inherently distinctive" or has acquired "secondary meaning"; 2) the similarity of the defendant's trade dress to that of the plaintiff creates a "likelihood of confusion" on the part of consumers; and 3) the plaintiff's trade dress is "nonfunctional." *See Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063 (7th Cir. 1992). We need not apply this test because we find that the Beachams have not shown that they possess any protectible trade dress in *Using WordPerfect*.

4. Any claims under a "reverse passing off" theory will be addressed below under the common law unfair competition claim.

paying royalties to the Beachams. In *Hammons Mobile Homes, Inc. v. Laser Mobile Home Transport,* 501 N.E.2d 458, 461 (Ind. App. 1 Dist.1986), the court defined common law unfair competition:

> Unfair competition consists in passing off, or attempting to pass off, upon the public, the goods or business of one person as and for the goods and business of another. It consists essentially in the conduct of a trade or business in such a manner that there is either an express or implied representation to that effect.

*See also Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 940 (7th Cir. 1986) (passing off means "trying to get sales from a competitor by making consumers think that they are dealing with that competitor when they are buying from the passer off.")

In this case, the Beachams have no ownership interest in *Using WordPerfect* or its packaging. Macmillan sells the books and owns the rights to all the *Using WordPerfect* books. Moreover, as authors, the Beachams sell no goods to the public and do not compete with Macmillan in the marketplace. We find that because the Beachams have no goods that Macmillan is trying to pass off as its own, the "passing off" theory of the Beachams' unfair competition claim must fail.

Moreover, "[t]raditional palming off [or passing off] involves the selling of one's goods or services under the name of a more popular competitor." *Rosenfeld v. W.B. Saunders,* 728 F.Supp. 236, 241 (S.D.N.Y. 1990), *aff'd,* 923 F.2d 845 (2d Cir.1990). Even were *Using WordPerfect* the Beachams' product, they have presented no evidence to suggest that a newer version of a software book based on a different, more advanced brand of software would palm off the recognition of the authors of an older edition based on a different, outdated software. Macmillan's summary judgment motion is granted as to the "passing off" theory of the Beachams' unfair competition claim.

### B. Reverse Palming Off

The Beachams further claim that Que engaged in a second type of unfair competition—"reverse palming off." Reverse palming off occurs when a party "directly misappropriates the services or goods of another by removing the name or trademark on another party's product and selling that product under a name chosen by the wrongdoer." *See Roho, Inc. v. Marquis,* 902 F.2d 356 (5th Cir.1990); *Rosenfeld,* 728 F.Supp. at 241. In reverse palming off cases, "the originator of the misidentified product is involuntarily deprived of the advertising value of [his] name and the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." *Smith v. Montoro,* 648 F.2d 602, 604 (9th Cir.1981). "A defendant may also be guilty of reverse palming off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name." *Arrow United Indus., Inc. v. Hugh Richards, Inc.,* 678 F.2d 410, 412 (2d Cir.1982).

The Beachams claim that Macmillan engaged in "reverse palming off" by removing their name from *Using WordPerfect 5* and selling "their product" as Macmillan's own. In order for Macmillan to have engaged in "reverse palming off," it must have removed the Beachams' name and trademarks from a book that the Beachams wrote, or modified the book, labeled it with another name (e.g. *Using WordPerfect 5* ), and then sold it as Macmillan's own product.

We find that Macmillan did not appropriate any work in which the Beachams had a protected interest. First, as noted above, the trademark and trade dress that were allegedly obliterated without the Beachams' authorization belonged to Macmillan. Second, because the Beachams admit that they did not write any part of *Using WordPerfect 5,* their contention that Macmillan removed their names from the *Using WordPerfect 5* fails to state a "reverse palming off" claim. The mere fact that there may be enough similarities between a book the Beachams authored and a subsequent book written by someone else so that the latter constitutes a "revised edition" of *Using WordPerfect* does not mean that the Beachams are entitled to

authorship credit on the cover.[5] Because the Beachams did not write any part of *Using WordPerfect 5*, Macmillan did not engage in "reverse palming off" by not including their name on the book's cover. Our conclusion does not settle whether the Beachams' contribution to *Using WordPerfect 5* based on features from earlier versions for which they were given authorship credit is significant enough for *Using WordPerfect 5* to be deemed a "revised edition" of *Using Word-Perfect*.

Finding no genuine issue of material fact that plaintiffs lack a competitive and proprietary interest in *Using WordPerfect* or its subsequent editions, we conclude that the Beachams cannot establish an unfair competition claim under either "passing off" or "reverse palming off" theories and grant Macmillan's motion for summary judgment as to Count III.

### V. CONCLUSION

The Court grants Macmillan's motion for summary judgment as to Counts II and III and the part of Count I involving breach of the implied covenant of good faith and fair dealing. Summary judgment as to the remaining part of Count I is denied.

It is so ORDERED.

### PARTIAL SUMMARY JUDGMENT

Pursuant to the Court's entry of this date, judgment is hereby entered in favor of defendant Macmillan and against plaintiffs Walton and Deborah Beacham on Counts II, III, and part of Count I. Each party is to bear its own costs.

**5.** The Beachams' reverse palming off claim under § 1125(a) of the Lanham Act would thus also be deficient. *See Web Printing Controls Co., Inc. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1203 n. 1 (7th Cir.1990).