**In re SUNTERRA CORP., et al.**

**Resort Condominium International, LLC, Appellant,**

v.

**Sunterra Corp., et al., Appellee.**

**No. CIV. JFM–03–179.**

United States District Court, D. Maryland.

Aug. 28, 2003.

Jay A. Shulman, Irving E. Walker, Saul Ewing LLP, Baltimore, MD, Mark R. Wenzel, Krieg DeVault LLP, Indianapolis, IN, for Appellant.

Kenneth Oestreicher, Whiteford, Taylor and Preston, Baltimore, MD, for Appellee.

## MEMORANDUM

MOTZ, District Judge.

Resort Condominium International ("RCI") has appealed the bankruptcy court's denial of its motion to dismiss Sunterra Corporation's ("Sunterra") counterclaims. RCI contends that the counterclaims fail to state a claim upon which relief may be granted. I will reverse the bankruptcy court's denial of RCI's motion.[1]

---

1. RCI also argues that Sunterra's counterclaims are preempted under *Koffman v. Os-*

### I.

In December 1997, RCI and Sunterra entered into two agreements—a Master Services Agreement ("MSA") and Master Affiliation Agreement ("MAA").[2] (Compl.¶ 5.) The M.S.A. outlines the manner in which RCI would provide external exchange services to Sunterra. The MAA describes the resorts encompassed by the agreements and the procedures for Sunterra to add new resorts. (*Id.* ¶ 6.) Sunterra could terminate the M.S.A. and MAA without cause on six months notice to RCI. (*Id.* ¶ 8.) The M.S.A. also provides: "[A]fter the Termination Date, the parties shall have no other duties or responsibilities to the other, except that the parties agree not to intentionally or maliciously take any action for the purpose of harming the other party or its business." (MSA § 10.8.)

In December 1997, Sunterra also entered a Software Licensing Agreement ("SLA") with RCI Technology Corporation f/k/a Resort Condominium Corporation ("RCC"), a wholly owned subsidiary of RCI. (Compl.¶¶ 14–16.) Under the SLA, RCC granted Sunterra a non-exclusive, world-wide, perpetual, irrevocable, royalty-free license to use, copy, and modify the object code and source code of certain software. (*Id.* ¶ 16.) Sunterra obtained the license to develop a company-wide computer system to manage its operations. (*Id.* ¶ 17.) The SLA has substantial barriers to termination because of the importance of the software to Sunterra. (*Id.* ¶ 19.) Moreover, RCC agreed to cause RCI to comply with the SLA as if RCI were a party to the SLA. (*Id.* ¶ 20.)

Sunterra spent in excess of $38 million to modify and further develop the software licensed under the SLA. The modified software is known as the SWORD system. (*Id.* ¶ 21.) Sunterra currently uses the SWORD system to manage all of its hospitality functions as well as other functions essential for its business operation. (*Id.* ¶ 22.)

Between May and November 2000, Sunterra and thirty-eight of its affiliates filed for Chapter 11 bankruptcy in Maryland. On March 28, 2002, RCI allegedly caused RCC to file a motion to deem the SLA rejected.[3] RCI allegedly took this action because: (1) it had not received a satisfactory response from Sunterra regarding Sunterra's intent to assume or reject the M.S.A. and MAA; and (2) it wanted to harm Sunterra's business because Sunterra decided to affiliate with RCI's chief business rival, Interval International. (*Id.* ¶¶ 28–29.)

On May 17, 2002, Sunterra attempted to exercise its early termination right under the M.S.A. by providing RCI with a notice of termination. The notice of termination was contingent on the approval of the bankruptcy court. (*Id.* ¶ 9.) On May 31, 2002, Sunterra filed a motion with the

---

*teoimplant Tech., Inc.*, 182 B.R. 115 (D.Md. 1995). Because there are independent state law grounds that will dispose of this case, I will not address the preemption issue in detail. *See Bell Atlantic Maryland, Inc. v. Prince George's County*, 212 F.3d 863, 865–66 (4th Cir.2000). I note, however, that many of the considerations that led to the preemption finding in *Koffman* are not present here. *See Koffman*, 182 B.R. at 123–27.

**2.** Because this is an appeal from a motion to dismiss, I will base my decision on the facts as alleged in Sunterra's complaint and objection to RCI's proof of claim filed in the bankruptcy court.

**3.** The bankruptcy court denied RCC's motion on June 7, 2002. RCC then appealed. In January 2003, I affirmed the bankruptcy court's decision on different grounds. *RCC Tech. Corp. v. Sunterra Corp.*, 287 B.R. 864 (D.Md.2003). RCC has appealed my decision to the Fourth Circuit. That appeal is currently pending.

bankruptcy court asking for the authority to terminate and reject the M.S.A. and MAA. (*Id.* ¶ 10.) On June 21, 2002, the bankruptcy court entered an order authorizing Sunterra to reject the M.S.A. and MAA. (*Id.* ¶ 12.)

After Sunterra rejected the M.S.A. and MAA, RCI filed a proof of claim for approximately $28 million. (RCI's Br. at 6.) Sunterra filed an objection to the proof of claim. (Compl. ¶¶ 45–53.) Sunterra also filed three counterclaims against RCI based on RCI's alleged role in causing RCC to file the motion to deem the SLA rejected: breach of contract, violation of the covenant of good faith and fair dealing, and tortious interference with prospective advantage.[4] (*Id.* ¶¶ 27–44.) On November 18, 2002, RCI filed a motion to dismiss Sunterra's counterclaims. (RCI's Br. at 2.) After a hearing on December 12, 2002, the bankruptcy court denied RCI's motion to dismiss. (*Id.*) RCI has appealed.

## II.

### A.

■ In Count I of its counterclaim, Sunterra contends that RCI breached § 10.8 of the M.S.A. when it caused RCC to file the motion to deem the SLA rejected. (Compl. ¶¶ 27–34.) Section 10.8 provides:

Neither party will be liable to the other party for damages of any sort solely as a result of terminating this Agreement in accordance with its terms and termination of this Agreement will be without prejudice to any other right or remedy of either party. Other than with respect to the surviving provisions of the Agreement and any monies then due and owing by the parties to each other, *after the Termination Date, the parties shall*

*have no other duties or responsibilities to the other, except that the parties agree not to intentionally or maliciously take any action for the purpose of harming the other party or its business.*

(MSA § 10.8 (emphasis added).) RCI claims that Sunterra cannot recover under Count I because (1) § 10.8 applies only after termination of the MSA, and (2) neither party has terminated the MSA. (RCI's Br. at 17–19.) Sunterra argues that it properly terminated the M.S.A. prior to rejecting it in bankruptcy when it sent RCI a notice of termination. (Sunterra's Br. at 14–19.)

The parties' debate regarding whether the M.S.A. has been effectively terminated ignores a dispositive fact. RCC filed its motion to deem the SLA rejected on March 28, 2002. (Compl. ¶ 28.) Sunterra did not send RCI a notice of termination until May 17, 2002. (*Id.* ¶ 9.) Thus, even assuming that Sunterra effectively terminated the M.S.A. when it claims it terminated the MSA, RCI's alleged wrongdoing took place *before* termination. By its terms, § 10.8's prohibition on either party taking action to harm the other applies only *after* termination. As a result, Sunterra's claim for breach of contract fails.

### B.

In Count II of its counterclaim, Sunterra contends that RCI violated the covenant of good faith and fair dealing by causing RCC to file the motion to deem the SLA rejected. (Compl. ¶¶ 35–38.) RCI claims that Sunterra cannot recover under Count II because there is no independent cause of action for breach of the covenant of good faith and fair dealing. (RCI's Br. at 19–21.)

---

**4.** Sunterra has apparently voluntarily dismissed its tortious interference claim without

prejudice. (RCI's Br. at 7.)

The parties initially debate which state's law applies to this dispute. RCI contends that Indiana law applies, while Sunterra argues that Florida law applies. (*See* RCI's Br. at 19–20; Sunterra's Br. at 20.) Ultimately, this debate is irrelevant because the facts of this case as alleged by Sunterra do not support an action for breach of the implied covenant of good faith and fair dealing under either Indiana or Florida law.[5]

In Indiana, a duty of good faith and fair dealing is not implied in every contract. *First Fed. Sav. Bank v. Key Mkts., Inc.*, 559 N.E.2d 600, 604 (Ind. 1990); *Pardieck v. Pardieck*, 676 N.E.2d 359, 364 (Ind.Ct.App.1997). When the terms of a contract are clear, Indiana courts enforce the contract as written and do not "require a party acting pursuant to such a contract to be 'reasonable,' 'fair,' or show 'good faith' cooperation." *Key Mkts.*, 559 N.E.2d at 604; *see also Beacham v. Macmillan, Inc.*, 837 F.Supp. 970, 975 (S.D.Ind.1993) ("We will not read an implied duty of good faith and fair dealing into a contract where the parties' intentions are clear."). In fact, Indiana courts have implied the duty of good faith and fair dealing only against insurance companies and parties owing fiduciary duties to each other. *Beacham*, 837 F.Supp. at 975.

The terms of the M.S.A. are clear and complete. It is a thirty-four page document with approximately seven pages of definitions. Under Indiana law, therefore, the M.S.A. § should be enforced as written—no implied covenant of good faith

and fair dealing should be read into the contract. *See Key Mkts.*, 559 N.E.2d at 604. Moreover, the M.S.A. is a contract between two sophisticated business parties. Neither party is an insurance company, nor do the parties owe any fiduciary duties to each other. As a result, Sunterra has no claim for breach of the implied covenant of good faith and fair dealing under Indiana law.

"Under Florida law, the implied covenant of good faith and fair dealing is part of every contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir.1999). However, "an action for breach of the implied covenant of good faith cannot be maintained in the absence of breach of an express contract provision." *Id.* at 1316. "[A] duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Id.* (quoting *Hosp. Corp. of Am. v. Florida Med. Ctr., Inc.*, 710 So.2d 573, 575 (Fla.Dist.Ct. App.1998)).

For the reasons I have previously stated, Sunterra has failed to effectively allege that RCI has breached an express provision of the MSA. Therefore, Sunterra's claim for breach of the covenant of good faith and fair dealing fails under Florida law as well.

A separate order is being entered herewith.

---

5. I also cannot determine the choice-of-law issue based on the record before me. Federal courts apply the choice-of-law rules of the states in which they sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In contract cases, Maryland applies the rule of *lex loci contractus*. *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988). Under this rule, the law of the state where the contract was made controls its validity and construction. *Id.* Here, the evidence is unclear about where the contract was made. (*See* RCI's Br. at 20 & n. 7; Sunterra's Br. at 20.)

ORDER

For the reasons stated in the accompanying memorandum, it is, this 28th day of August 2003,

ORDERED that

1. The denial of appellant's motion to dismiss by the bankruptcy court is reversed;

2. Judgment is entered in favor of appellant; and

3. This case is closed.