[No. D026953. Fourth Dist., Div. One. June 5, 1998.]

LOUIE PAULETTO et al., Plaintiffs and Appellants, v.
RELIANCE INSURANCE COMPANY et al., Defendants and
Respondents.

**COUNSEL**

Weeks, Rathbone, Robertson & Johnson and William M. Rathbone for Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Philip S. Warden, David E. Kleinfeld and David M. Logan for Defendants and Respondents.

**OPINION**

**O'NEILL, J.**\*—Louie Pauletto and Dorothy E. Pauletto filed a complaint for malicious prosecution and abuse of process against Reliance Insurance

---

\*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Company (Reliance), United Pacific Insurance Company (United Pacific) and the law firm of Booth, Mitchell & Strange (collectively defendants). The complaint was based on defendants' institution of proceedings in federal bankruptcy court to contest the dischargeability of a debt the Paulettos owed to Reliance and United Pacific. The Paulettos appeal a judgment entered against them after the court sustained defendants' demurrer to the complaint without leave to amend on the ground their causes of action are preempted by federal bankruptcy law. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this is an appeal from a judgment of dismissal entered after the sustaining of a general demurrer, ". . . we accept as true all the material allegations of the complaint." (*Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 7 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) The Paulettos' complaint discloses the following facts.

The Paulettos were the sole owners and shareholders of Louetto Construction Company, Inc. (Louetto), a general contractor in the construction business. From 1982 to 1990, Louetto purchased surety bonds required for various construction projects from Reliance and United Pacific.

In December 1991 the Paulettos filed a voluntary chapter 7 (11 U.S.C. § 701 et seq.) bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of California.[1] Through their counsel (Booth, Mitchell & Strange) Reliance and United Pacific filed an adversary proceeding under title 11 of the United States Code[2] section 523(a)(2), seeking a determination that a debt of over $5 million the Paulettos owed them was not dischargeable because the money was obtained fraudulently. The bankruptcy court entered judgment in favor of the Paulettos on Reliance and United Pacific's complaint to determine the dischargeability of the debt.

The Paulettos then filed the instant state court action for malicious prosecution and abuse of process. Defendants generally demurred to the complaint on the following grounds: (1) the superior court lacked subject matter jurisdiction over the Paulettos' causes of action because they are preempted by federal bankruptcy law; (2) the malicious prosecution cause of action failed as a matter of law because the underlying adversary proceeding was defensive in nature; (3) the cause of action for abuse of process was barred

---

[1]Reliance and United Pacific had earlier filed involuntary petitions against the Paulettos and Louetto.

[2]All further statutory references are to title 11 of the United States Code (Bankruptcy Code) unless otherwise specified.

by the litigation privilege of Civil Code section 47, subdivision (b); and (4) the complaint failed to state facts sufficient to constitute a cause of action for abuse of process.

The court sustained the demurrer without leave to amend on the ground the court lacked subject matter jurisdiction over the Paulettos' claims. In this appeal the Paulettos challenge only the dismissal of their cause of action for malicious prosecution.[3]

## DISCUSSION

### The Malicious Prosecution Claim Is Preempted

■ "Federal preemption of state law can occur in three circumstances: (1) express preemption where Congress explicitly preempts state law; (2) implied preemption where Congress has occupied the entire field (field preemption); and (3) implied preemption where there is an actual conflict between federal and state law (conflict preemption). [Citations.]" (*Gracia* v. *Volvo Europa Truck, N.V.* (7th Cir. 1997) 112 F.3d 291, 294; *English* v. *General Electric Co.* (1990) 496 U.S. 72, 78-79 [110 S.Ct. 2270, 2274-2275, 110 L.Ed.2d 65].) ■ Substantial case authority compels us to conclude the Paulettos' malicious prosecution claim is implicitly preempted by federal bankruptcy law under principles of both field and conflict preemption.

*Gonzales* v. *Parks* (9th Cir. 1987) 830 F.2d 1033, 1035, held a state court lacked subject matter jurisdiction to hear a claim that a debtor's filing of a voluntary bankruptcy petition was an abuse of process. The *Gonzales* court stated: "State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating. [Citation.] The ability collaterally to attack bankruptcy petitions in the state courts would also threaten the uniformity of federal bankruptcy law, a uniformity required by [article I, section 8, clause 4 of the United States] Constitution." (*Ibid.*)

*Gonzales* also concluded that ". . . Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions should be read as an implicit rejection of other penalties, including the kind of substantial damage

---

[3]The Paulettos concede their cause of action for abuse of process is barred by the litigation privilege of Civil Code section 47, subdivision (b).

awards that might be available in state court tort suits. Even the mere possibility of being sued in tort in state court could in some instances deter persons from exercising their rights in bankruptcy. In any event, it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized." (*Gonzales v. Parks, supra,* 830 F.2d at p. 1036.)

Applying the reasoning of *Gonzales,* this court in *Gene R. Smith Corp.* v. *Terry's Tractor, Inc.* (1989) 209 Cal.App.3d 951, 952-953 [257 Cal.Rptr. 598], held that federal law preempted a debtor's state court action for abuse of process and malicious prosecution based on the creditor-defendants' allegedly malicious prosecution of an involuntary bankruptcy petition. The court in *Gene R. Smith Corp.* noted that section 303(i) "permits the bankruptcy court on dismissal of a petition to award a debtor costs, reasonable attorney's fees and any damages proximately caused by the taking of the debtor's property. If the involuntary petition is filed in bad faith the bankruptcy court has the additional power to award damages proximately caused by such filing and punitive damages. [¶] This provision reflects Congress's intent that the case-by-case development of law relating to 'bad faith' in this context should be accomplished in federal courts and not in state courts. The parties make no effort to distinguish the difference, if any, between conduct constituting 'bad faith' and 'malicious prosecution' treating both as virtually identical. On that assumption, it would indeed be anomalous and, to say the least, inconsistent with this legislative intent for state courts to develop a different, more liberal definition of 'bad faith' for malicious prosecution purposes than that developed in the federal system. Different standards defining identical conduct adds an unnecessary and confusing component to the uniform law to be applied in bankruptcy proceedings. The additional risk that substantial damage awards in state courts would create a material disincentive to those seeking to use the bankruptcy laws only exacerbates the problem. The determination of damages in state courts should not determine the potential cost of entry into the federal bankruptcy system." (*Gene R. Smith Corp., supra,* at pp. 954-955.)

In *Idell v. Goodman* (1990) 224 Cal.App.3d 262, 265-266 [273 Cal.Rptr. 605], the plaintiff filed a voluntary chapter 7 bankruptcy proceeding. After the plaintiff's creditors brought an unsuccessful adversary proceeding in bankruptcy court under section 727(a), alleging the plaintiff's debts should not be discharged, the plaintiff sued defendants in state court for malicious prosecution. (*Idell, supra,* at pp. 265-266.) One of the defendants demurred to the complaint on the grounds (1) a malicious prosecution claim cannot be based on a section 727 adversary proceeding because the proceeding is

purely defensive and (2) the plaintiff's claim was preempted by federal bankruptcy law. The trial court sustained the demurrer without leave to amend on the ground a section 727 proceeding is defensive in nature and therefore cannot form the basis for an action for malicious prosecution. (*Idell, supra,* at p. 268.) The Court of Appeal affirmed the judgment on both grounds.

Regarding federal preemption, *Idell* concluded that *Gene R. Smith Corp.*'s reasoning applies equally where "a debtor who has filed a bankruptcy petition claims that his or her creditors improperly objected to a discharge of the debtor's fiscal obligations." (*Idell* v. *Goodman, supra,* 224 Cal.App.3d at p. 270.) *Idell* noted that although Congress has not provided a specific statutory remedy for the bad faith filing of a section 727 adversary proceeding, a federal remedy for such a bad faith filing is available in the form of sanctions under the Federal Rules of Bankruptcy Procedure,[4] rule 9011 (11 U.S.C.) and title 28 of the United States Code, section 1927. (*Idell, supra,* at p. 270.) Thus, *Idell* concluded the malicious prosecution action was preempted by federal law because ". . . the filing of a section 727 adversary proceeding to block the discharge of debts in bankruptcy is within the exclusive jurisdiction of the federal courts, and because sanctions are available to debtors when section 727 proceedings are filed in bad faith . . . ." (*Idell, supra,* at p. 271.) ▇ *Idell* added: "In this respect, the reasoning of *Gonzales* bears repeating. The existence of federal sanctions for the filing of frivolous and malicious bankruptcy pleadings must be read as an implicit rejection of state court remedies. The mere possibility of being sued in tort in state court, with the potential for substantial damage awards, could deter persons from exercising their rights in bankruptcy. Thus, it is for Congress and the federal courts, not state courts, to decide what incentives and penalties shall be utilized in the bankruptcy process." (*Ibid.*)

In *Koffman* v. *Osteoimplant Technology, Inc.* (Bankr. D.Md. 1995) 182 B.R. 115, the court applied principles of field and conflict preemption in deciding whether a corporation against which involuntary chapter 7 bankruptcy petitions were filed and later dismissed could maintain state law claims for abuse of process and malicious prosecution based on the filing of the petitions. Noting that no express provision of the Bankruptcy Code preempts state law actions for abuse of process or malicious prosecution, *Koffman* stated its analysis necessarily focused "on the extent to which Congress has occupied the field of sanctioning improper behavior in bankruptcy proceedings, and the extent to which allowing state courts to rule on the propriety of actions taken in a federal court in alleged violation of federal statutes would present an obstacle to the achievement of the objectives of Congress in enacting the Bankruptcy Code." (*Koffman, supra,* at p. 123.)

---

[4] All rule references are to the Federal Rules of Bankruptcy Procedure.

*Koffman* noted that ". . . because the common law of the various states provides much of the legal framework for the operation of the bankruptcy system, it cannot be said that Congress has completely preempted all state regulation which may affect the actions of parties in bankruptcy court. 'Where the Bankruptcy Code is silent, and no uniform bankruptcy rule is required, the rights of the parties are governed by the underlying non-bankruptcy law.' [Citation.] *Remedies and sanctions for improper behavior and filings in bankruptcy court, however, are matters on which the Bankruptcy Code is far from silent and on which uniform rules are particularly important.*" (*Koffman* v. *Osteoimplant Technology, Inc., supra,* 182 B.R. at p. 124, italics added.) *Koffman* noted the Bankruptcy Code provides an extensive scheme of remedies for improper behavior in bankruptcy proceedings, including sanctions for bad faith filing of involuntary proceedings (§ 303(i)(2)) and compensatory and punitive damages for willful violations of an automatic stay (§ 362(h)). *Koffman* also noted that section 105(a), authorizes the court to " '. . . issue any order, process, or judgment that is necessary or appropriate . . . to prevent an abuse of process,' " and rule 9011 authorizes sanctions for signing documents not " 'well grounded in fact and . . . warranted by existing law . . . .' " (*Koffman, supra,* at p. 124.)

Although *Koffman* viewed the Bankruptcy Code's scheme of remedies standing alone as "insufficient to imply congressional intent to preempt all state activity in the area" (*Koffman* v. *Osteoimplant Technology, Inc., supra,* 182 B.R. at p. 125), it concluded preemption was warranted because allowing the common law claims in question "to go forward would frustrate the congressional purpose in enacting the federal scheme. [Citation.]" (*Ibid.*) Relying heavily on *Gonzales, Koffman* reasoned that "[a]llowing state tort actions based on allegedly bad faith bankruptcy filings . . . to go forward ultimately would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme," a result which "threatens to erode the exclusive federal authority in this area [and] the uniformity of federal bankruptcy law . . . ." (*Ibid.*) "Exclusive federal jurisdiction over bankruptcy proceedings would mean little if standards of conduct in bankruptcy proceedings varied from state to state, and from state to federal court. [Citation.]" (*Id.* at p. 126.)

We recognize that the proceeding underlying the malicious prosecution claim in *Koffman* was the filing of an involuntary bankruptcy petition. However, *Koffman*'s analysis of the conflict between state law tort remedies and the objectives of uniformity and exclusive federal authority over bankruptcy proceedings applies equally where the alleged improper proceeding is an adversary proceeding.

In *MSR Exploration, Ltd.* v. *Meridian Oil, Inc.* (9th Cir. 1996) 74 F.3d 910, 912, a chapter 11 debtor brought a malicious prosecution action against a

creditor based on the creditor's allegedly malicious pursuit of creditors' claims in the bankruptcy proceedings. The *MSR Exploration, Ltd.* court defined the major issue before it as "whether state malicious prosecution actions for events taking place within the bankruptcy court proceedings are completely preempted by federal law." (*Ibid.*) *MSR Exploration, Ltd.* found federal preemption applied for three reasons.

First, *MSR Exploration, Ltd.* noted ". . . Congress has expressed its intent that bankruptcy matters be handled in a federal forum by placing bankruptcy jurisdiction exclusively in the [federal] district courts . . . ." (*MSR Exploration, Ltd.* v. *Meridian Oil, Inc., supra,* 74 F.3d at p. 913.) *MSR Exploration, Ltd.* concluded ". . . the exclusivity of federal jurisdiction over bankruptcy matters is an indication of Congress's intent. Although a preemption claim is asthenic when applied to cases where there is concurrent state and federal jurisdiction over the underlying federal cause of action, it becomes puissant when applied to bankruptcy." (*Id.* at pp. 913-914.)

Second, *MSR Exploration, Ltd.* noted the Bankruptcy Code "demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process. [¶] Debtors' petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and innumerable other proceedings, would all lend themselves to claims of malicious prosecution. Those possibilities might gravely affect the already complicated processes of the bankruptcy court. [Citations.] [T]he opportunities for asserting malicious prosecution claims would only be limited by the fertility of the pleader's mind and by the laws of the state in which the proceeding took place. [¶] In short, the highly complex laws needed to constitute the bankruptcy courts and regulate the rights of debtors and creditors also underscore the need to jealously guard the bankruptcy process from even slight incursions and disruptions brought about by state malicious prosecution actions. . . ." (*MSR Exploration, Ltd.* v. *Meridian Oil, Inc., supra,* 74 F.3d at p. 914, fn. omitted.)

The third reason *MSR Exploration, Ltd.* found preemption was the need for uniformity in bankruptcy law, a need which "persuaded the framers of the United States Constitution to expressly grant Congress the power 'to establish . . . uniform Laws on the subject of Bankruptcies throughout the United

States.' " (*MSR Exploration, Ltd.* v. *Meridian Oil, Inc., supra,* 74 F.3d at p. 914, quoting U.S. Const., art. I, § 8, cl. 4.) "[T]he unique, historical, and even constitutional need for uniformity in the administration of the bankruptcy laws is another indication that Congress wished to leave the regulation of parties before the bankruptcy court in the hands of the federal courts alone. Of course, Congress did provide a number of remedies designed to preclude the misuse of the bankruptcy process. [Citations.] That, too, suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents. [Citations.]" (*MSR Exploration, Ltd.* v. *Meridian Oil, Inc., supra,* 74 F.3d at p. 915.)

The *MSR Exploration, Ltd.* court reviewed its preemption finding in *Gonzales* and concluded the same reasoning applies to a malicious prosecution action based on the filing of an unmeritorious creditor's claim, stating, "[h]ere, too, there is the threat that the exclusive jurisdiction of the bankruptcy court will be invaded and that uniformity will be undercut. A creditor's claim may be unmeritorious, but then so too might a debtor's petition. In fact, a creditor may have less flexibility than a debtor. The debtor initiates the process and, as here, can obtain a cutoff date for the filing of claims. The creditor may have less time to ruminate on the merits of the claim before filing it. A failure to appear in a timely fashion may well forfeit whatever rights the creditor might have. Thus, while a creditor's claim cannot be said to be solely defensive in nature, it does have that flavor to some extent. The threat of later state litigation may well interfere with the filings of claims by creditors *and with other necessary actions that they, and others, must or might take within the confines of the bankruptcy process.* Whether creditors should be deterred, and when, is a matter unique to the flow of the bankruptcy process itself—a matter solely within the hands of the federal courts. . . . Bankruptcy law does not exist solely for debtors. It is also for the benefit of creditors; it gives them a single forum where debts and priorities can be determined in an orderly manner, a forum where those debts can be collected in whole or (more likely) in part. . . ." (*MSR Exploration, Ltd.* v. *Meridian Oil, Inc., supra,* 74 F.3d at p. 916, italics added.)

The threat of later state litigation potentially interferes with the filing of section 523 adversary proceedings as much as with the filing of creditors' claims or section 727 proceedings. The distinctions between the various bankruptcy proceedings which could give rise to a malicious prosecution action are not important. ▮ The line of cases we follow, from *Gonzales* to *MSR Exploration, Ltd.,* make it clear that no authorized bankruptcy proceeding can properly support a state-law claim for malicious prosecution or abuse of process. Such state-law tort claims impermissibly intrude upon

exclusive federal authority over bankruptcy proceedings and threaten the uniformity of federal bankruptcy law regardless of the nature of the underlying proceeding.

The Paulettos contend the entire line of preemption cases discussed above is flawed because the jurisdiction of federal courts is grounded in statute (*Celotex Corp. v. Edwards* (1995) 514 U.S. 300, 307 [115 S.Ct. 1493, 1498, 131 L.Ed.2d 403]), and none of the cases applied title 28 of the United States Code section 1334,[5] which defines the subject matter jurisdiction of bankruptcy courts.[6] This contention is without merit. *Koffman* acknowledged there is no express provision in the Bankruptcy Code preempting state law remedies for malicious prosecution. (*Koffman v. Osteoimplant Technology, Inc., supra,* 182 B.R. at p. 123.) The issue before us is not whether the jurisdictional language of section 1334 of title 28 of the United States Code technically or theoretically would allow a state court malicious prosecution claim based on an underlying bankruptcy proceeding, but whether allowance of such a claim conflicts with the Bankruptcy Code's overall scheme of remedies and threatens Congress's objectives of uniformity in bankruptcy law and exclusive federal jurisdiction over bankruptcy proceedings. The general jurisdictional provisions of section 1334 of title 28 of the United States Code are immaterial to our implied preemption analyses based on *Gonzales, Gene R. Smith Corp., Idell, Koffman,* and *MSR Exploration, Ltd.*

We join *MSR Exploration, Ltd.* in rejecting "a world where the specter of additional litigation must haunt virtually every actor in a bankruptcy proceeding." (*MSR Exploration, Ltd. v. Meridian Oil, Inc., supra,* 74 F.3d at p. 916.) A party aggrieved by bad faith and malicious filings in bankruptcy court is limited to the remedies provided by the Federal Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Accordingly, the Paulettos' cause of action for malicious prosecution is preempted by federal law.

---

[5]Title 28 of the United States Code section 1334(b) provides: "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

[6]The Paulettos argue their malicious prosecution claim is not preempted because it not a proceeding "arising in," "arising under" or "related to" their bankruptcy proceedings, and the bankruptcy court therefore lacks jurisdiction to adjudicate it under title 28 of the United States Code section 1334. Assuming arguendo the Paulettos' jurisdictional analysis is correct, we do not view their inability to prosecute their malicious prosecution claim in bankruptcy court as a basis to conclude it is not preempted by federal bankruptcy law. The essential preemption question is not whether the particular state-law remedy the Paulettos seek could be obtained in bankruptcy court, but whether the availability of other remedies under the federal scheme precludes their pursuit of a state-law remedy outside the bankruptcy system.

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and McDonald, J., concurred.