[No. D037375. Fourth Dist., Div. One. June 14, 2002.]

DOROTHY SATTEN, Plaintiff and Appellant, v.
PATRICK D. WEBB et al., Defendants and Respondents.

## COUNSEL

Hovey & Kirby, Dean T. Kirby, Jr., and Martin T. McGuinn for Plaintiff and Appellant.

Klinedinst, Fliehman & McKillop, G. William VanDeWeghe, Jr., Kendra J. Hall and Natalie P. Vance for Defendants and Respondents.

## OPINION

**HUFFMAN, J.**—Plaintiff Dorothy Satten (Satten) appeals the order of dismissal entered against her after a demurrer to her complaint for malicious prosecution damages, brought by defendants and respondents Patrick D. Webb and his law firm, Webb & Carey, APC (collectively Webb), was sustained without leave to amend. The trial court ruled that it lacked jurisdiction to proceed with the malicious prosecution allegations, because they were based upon an underlying action that was within the exclusive jurisdiction of the bankruptcy court, in that it concerned the administration of the bankruptcy estate. The underlying action by James Keenan and Judy Keenan, clients of Webb, was originally commenced in state court on fraud theories, but was removed to bankruptcy court due to the allegations made about the participation of the bankruptcy trustee, as well as Satten, in the alleged fraud. (28 U.S.C. § 1452.) The Keenans' tort theories were that the bankruptcy trustee, along with Satten, acted fraudulently and interfered with prospective economic advantage in reaching a settlement during the administration of the Keenan bankruptcy estate. The bankruptcy court ruled against the Keenans on their fraud allegations.

Accordingly, even though Satten had received a favorable termination to this underlying action against her in the bankruptcy court, the trial court, in

ruling on the demurrer, found federal preemption applied to her malicious prosecution action and sustained the demurrer without leave to amend. In making its ruling, the court relied on a line of authority well represented by *Pauletto v. Reliance Insurance Co.* (1998) 64 Cal.App.4th 597 [75 Cal.Rptr.2d 334] (*Pauletto*), holding that a party aggrieved by bad faith or malicious filings in bankruptcy court is limited to the remedies provided by the United States Bankruptcy Code (11 U.S.C.) and the Federal Rules of Bankruptcy Procedure. (See, e.g., Fed. Rules Bankr. Proc., rule 9011, providing for sanctions for frivolous filings.)

Satten contends the trial court's jurisdictional ruling was erroneous, because the underlying fraud proceeding in which she received a favorable termination was commenced in state court on state law claims, and only reached bankruptcy court due to removal of the matter by the bankruptcy trustee whose administration of the estate was challenged in the underlying action. She contends that the policies which require a finding of federal preemption of any challenges to an underlying authorized bankruptcy proceeding do not apply to her case, because this underlying action for fraud was not fundamentally based on federal law or specifically of a core bankruptcy character. (See, e.g., *Pauletto, supra*, 64 Cal.App.4th 597.) We agree that this case represents an exception to the normal rule of preemption in the bankruptcy context and reverse the order sustaining the demurrer without leave to amend.

FACTUAL AND PROCEDURAL BACKGROUND

For purposes of analyzing the ruling on demurrer, we take as true the allegations in the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) This malicious prosecution complaint against Webb and his former clients, James Keenan and Judy Keenan, was preceded by several different stages of state and federal litigation, which we describe in sequence.

1. *Original 1994 State Court Action by the Keenans.*

In 1989, Satten sold the Keenans a one-half partnership interest in The Bridge Motor Inn, a hotel in Oceanside of which Satten was the longtime owner and operator. Satten received a number of promissory notes executed by the Keenans. The Keenans defaulted on the notes and Satten demanded payment.

The Keenans then brought the first state court action (the original action) against Satten, seeking $20 million in damages on the grounds that Satten

had fraudulently induced the Keenans to enter into the partnership agreement and had also mismanaged the hotel. Satten cross-complained for fraud and other theories. (*Keenan v. Satten* (Super. Ct. San Diego County, 1994, No. N64609).) Eventually, Satten prevailed, obtaining a superior court fraud judgment of over $18 million. The Keenans appealed.

### 2. *The Keenans' Chapter 11 Bankruptcy Filing.*

In 1996, while the state court appeal was pending, James Keenan filed a chapter 11 bankruptcy petition. (11 U.S.C. § 301 et seq.; *In re James W. Keenan* (S.D.Cal., 1996, No. 96-00871-B11.) Satten filed a claim in the Keenan bankruptcy case based on her judgment for damages. A former bankruptcy judge, Ross M. Pyle, was appointed as bankruptcy trustee. He joined in the state court appeal of Satten's judgment in the original action that had been brought by the Keenans.

Eventually, after competing expert evaluations of the existing judgment were obtained, Satten entered into a settlement with the bankruptcy trustee in which she accepted a $1.95 million general unsecured claim in the bankruptcy case in exchange for assigning her judgment against the Keenans to the bankruptcy trustee. The bankruptcy court approved the settlement (referred to herein as the bankruptcy settlement), and the order was affirmed after Keenan appealed it. The bankruptcy reorganization plan for Keenan was approved. Then, the appeal of Satten's state court judgment against the Keenans was dismissed. (*Pyle v. Keenan* (May 11, 2000, D025411) [nonpub. opn.].)

### 3. *Underlying Fraud Action in State Court by the Keenans.*

James and Judy Keenan then filed the fraud complaint that is the subject of this malicious prosecution action, in superior court, naming Satten as a defendant along with the bankruptcy trustee, Ross Pyle (*Keenan v. Satten* (Super. Ct. San Diego County, 1998, No. 721828)) (referred to here as the underlying action). The Keenans alleged in this underlying action that the bankruptcy settlement agreement was entered into with the intent to fraudulently deprive the Keenans of their $20 million claim against Satten, arising out of the failed partnership. The Keenans alleged the bankruptcy trustee had breached his fiduciary duty to the bankruptcy estate of James Keenan by liquidating the estate to obtain commissions, and by causing the previous state court appeal of the Satten judgment against the Keenans to be dismissed. Other claims were brought for Satten's and the trustee's alleged intentional interference with prospective economic and contractual advantage.

### 4. *Removal of Fraud Action to Bankruptcy Court.*

The bankruptcy trustee, joined by Satten, filed a notice of removal of the underlying action to bankruptcy court. (28 U.S.C. § 1452.)[1] The grounds given for the removal were that the bankruptcy court had retained jurisdiction under the Keenan bankruptcy reorganization plan to adjudicate subsequent disputes among holders of claims or causes of action involving the debtor and the bankruptcy court had jurisdiction over the matter because the Keenans asserted claims arising in or related to the chapter 11 case. (28 U.S.C. §§ 157(b)(2)(A), 1334(b).)[2] The trustee argued removal was proper because these claims related to the administration of the estate or the liquidation of the assets of the estate. Satten joined in the request and removal was accomplished.[3]

Once the fraud action was properly before it, the bankruptcy court heard the trustee's motion for summary judgment of the underlying action by the Keenans, along with Satten's joinder in the motion. (*In re James W. Keenan, supra,* No. 96-00871-B11.) The trustee argued summary judgment in his favor was proper because he was immune from the claims, based on his actions that were all within the scope of his official duties, and that were carried out pursuant to the bankruptcy joint plan of reorganization confirmed by the court. He also argued the claims were barred by res judicata and collateral estoppel due to the effect of previous proceedings.

---

[1]Title 28 United States Code section 1452, governing removal of claims related to bankruptcy cases, states in relevant part: "(a) A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

[2]Title 28 United States Code section 1334(b), providing for bankruptcy jurisdiction, states in relevant part: "Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to* cases under title 11." (Italics added.) As stated in *In re Fietz* (9th Cir. 1988) 852 F.2d 455, 457, a proceeding is related to a bankruptcy case under section 1334(b) when " 'the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.' " (Italics omitted.)

[3]Satten asserts the bankruptcy court's jurisdiction was not exclusive, but was supplemental in character, under 28 United States Code section 1367(a): "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." Webb does not disagree, but adds that there was also exclusive jurisdiction under the "related to" bankruptcy provision of 28 United States Code section 1334(b) (*ante,* fn. 2).

Satten joined in the summary judgment motion, arguing the same points about res judicata and collateral estoppel, and stating there was no factual basis to support any claims of fraud due to a lack of evidence to show Satten failed to disclose any material facts, or that the Keenans reasonably relied on any representations regarding the settlement agreement. At the hearing on the motion, Satten's attorney represented to the bankruptcy court that she would be seeking sanctions under the bankruptcy rules for the bringing of this frivolous action.[4]

■■ ■ The bankruptcy court's order granting summary judgment first stated that the court had subject matter jurisdiction over the matter under 28 United States Code section 1334, and the matter was a core proceeding in bankruptcy law. (28 U.S.C. § 157(b)(2)(A).)[5] Summary judgment was granted in favor of both the trustee and Satten on the basis there was no evidence to support any of the Keenan allegations of fraud and breach of fiduciary duty.

This bankruptcy court order was appealed to the district court, which affirmed the order. The district court's order stated that the Keenan complaint did not identify any fraudulent acts by Satten or provide any admissible evidence of fraudulent conduct on her part. These orders are attached

---

[4]Federal Rules of Bankruptcy Procedure, rule 9011 (11 U.S.C.) provides for imposition of sanctions by the bankruptcy court for frivolous filings: "(b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,— [¶] (1) it is not being presented for any improper purpose, such as to harass or to cause necessary delay or needless increase in the cost of litigation;. . . ." Such sanctions may be imposed: "(c) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." (Fed. Rules Bankr.Proc., rule 9011(b), (c).) The rule further provides in subdivision (c)(2): "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." (Ibid.)

[5]Title 28 United States Code section 157 defines the jurisdiction of bankruptcy courts over "core proceedings" as referred to in Northern Pipeline Co. v. Marathon Pipe Line Co. (1982) 458 U.S. 50, 57 [102 S.Ct. 2858, 2864, 73 L.Ed.2d 598], in relevant part, as follows: "(b)(1): Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title. [¶] (2) Core proceedings include, but are not limited to— [¶] (A) matters concerning the administration of the estate; [¶] . . . [¶] (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." Thus, core matters include matters affecting the administration of the estate, and other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship. (In re DeLorean Motor Co. (Bankr. 9th Cir. 1993) 155 B.R. 521, 525.)

as exhibits to the malicious prosecution complaint before us. In addition to appearing in the appellant's appendix as part of the record on appeal, these documents are the subject of an order for judicial notice of the proceedings in bankruptcy court with respect to the summary judgment hearing, including the removal request, summary judgment moving papers, joinders, and ruling.

### 5. Current Malicious Prosecution Action and Demurrer Proceedings.

Following entry of the district court order affirming the bankruptcy court's grant of summary judgment in favor of Satten, Satten filed this malicious prosecution complaint in superior court against both the Keenans and their attorneys, Webb and his law firm.[6]

Webb demurred to the malicious prosecution complaint on the ground that the superior court lacked jurisdiction to hear it because the claims stated were preempted by federal law. (Code Civ. Proc., § 430.10, subd. (a).)

The trial court sustained Webb's demurrer without leave to amend. The ruling stated that the underlying action was a core proceeding within the meaning of 28 United States Code section 157(b)(2)(A). The court made a finding that the underlying action was within the exclusive jurisdiction of the bankruptcy court in that it concerned the administration of the bankruptcy estate. The underlying allegations were that the trustee, along with Satten, acted fraudulently and breached fiduciary duties in the administration of the estate. Accordingly, relying on case law (e.g., *Pauletto, supra,* 64 Cal.App.4th 597), the court found preemption applied and the demurrer was sustained without leave to amend. No amendment was sought or allowed.

Satten appealed the order sustaining the demurrer and of dismissal. We deem the order the equivalent of a final appealable judgment. (*Hinman v. Department of Personnel Admin.* (1985) 167 Cal.App.3d 516, 520 [213 Cal.Rptr. 410].)

### 6. Judicial Notice Request of Companion Bankruptcy Court Malicious Prosecution Action.

This court has been requested to take judicial notice of the pleadings filed in a companion malicious prosecution action that Satten filed in the bankruptcy court and continued to litigate after the dismissal of this case. Eventually, the bankruptcy court dismissed it for lack of jurisdiction. These

---

[6]The Keenans were not served and had not appeared in the current malicious prosecution action as of the time of the demurrer proceedings. They are not parties to this appeal.

judicially noticed papers include a transcript of the hearing before the bankruptcy court judge who made the dismissal ruling, and who stated his belief that despite the earlier sustaining of the demurrer to the state court action, there must be some remedy for malicious prosecution in superior court. He referred to this appeal of the demurrer ruling, pending at that time, as possibly establishing the existence of such a remedy. (See pt. II.D., *post.*)[7]

## DISCUSSION

## I

### *Applicable Standards; Issue Presented*

■ To establish a cause of action for malicious prosecution of an underlying proceeding, a plaintiff must demonstrate " 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citation.]" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498].) Here, the challenge to the pleadings focuses solely on jurisdictional grounds, due to the nature of the underlying action, which was removed to and litigated in bankruptcy court. (5) Such a jurisdictional defense appearing on the face of the complaint, or based upon judicially noticeable facts, is appropriately addressed on demurrer. *(McGee v. Weinberg* (1979) 97 Cal.App.3d 798, 802 [159 Cal.Rptr. 86].)

■ To evaluate the ruling on demurrer, we apply these rules of review: "On appeal from a judgment of dismissal entered after a demurrer has been sustained without leave to amend, unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory. [Citation.] If there is a reasonable possibility that the defect in a complaint can be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend. [Citation.] The burden is on the plaintiff, however, to demonstrate the manner in which the complaint might be amended. [Citation.]" (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

When an appellate court reviews a ruling on demurrer, it independently determines whether a cause of action is stated under a consideration of all of

---

[7]Initially, the request to include evidence of this companion malicious prosecution action was presented to this court as a motion for augmentation of the record, and was denied. However, a judicial notice request was then made and granted. (Evid. Code, §§ 452, subd. (d), 459.) The request shows that the bankruptcy court's order was appealed to the district court, where it was still pending during our consideration of this appeal.

the facts pled, considered as true, such that the plaintiff should be entitled to any relief. This consideration of facts includes those evidentiary facts found in recitals of exhibits attached to a complaint. (*Frantz v. Blackwell* (1987) 189 Cal.App.3d 91, 94 [234 Cal.Rptr. 178].) Here, these exhibits include the memorandum decision of the bankruptcy court in the underlying Keenan fraud action, which granted summary judgment motions of Satten and the trustee, and the federal district court's order affirming the bankruptcy court's summary judgment order. In addition, at the request of both parties, extensive judicial notice has been taken of related bankruptcy court proceedings.

 Based on these materials, Satten contends the trial court erred in sustaining the demurrer without leave to amend because the underlying action is not of a federal character so as to activate the policies that require a finding of exclusive federal jurisdiction because of implied preemption, such as where Congress has occupied an entire field of regulation, or where there is an actual conflict between federal and state law (conflict preemption). Rather, she contends preemption is inappropriate here because the bankruptcy court decided the fraud action as to her under concurrent or supplemental jurisdiction. (28 U.S.C. §§ 1334(b), 1367.) She argues this matter must belong in state court, because malicious prosecution is primarily a matter of state law, the underlying proceeding can be evaluated in this context without impermissibly interfering with federal law, and moreover, she will be left without a remedy if this action is not allowed to proceed.

To evaluate these claims, we first set forth the policies that have been developed requiring federal preemption of malicious prosecution claims based on authorized bankruptcy proceedings, and then analyze this complaint in light of those policies.

## II

### *Authority Regarding Federal Preemption of State Malicious Prosecution Actions*

### A

### *Preemption Policies*

 " 'Federal preemption of state law can occur in three circumstances: (1) express preemption where Congress explicitly preempts state law; (2) implied preemption where Congress has occupied the entire field (field preemption); and (3) implied preemption where there is an actual conflict between federal and state law (conflict preemption). [Citations.]' [Citation.]"

(*Pauletto, supra*, 64 Cal.App.4th at p. 600.) The cases finding federal preemption of state law malicious prosecution claims have done so under the rubrics of field and conflict preemption, as there is no express preemption.

The general rule is that malicious prosecution is not treated as a federal tort. Rather, "[t]here hardly seems a pressing need for such a tort. State tort law of malicious prosecution may reach malicious federal litigation, as we shall see; and a defendant in a malicious federal suit can always ask the judge to protect him by injunction or impose sanctions on the plaintiff or the plaintiff's counsel. [Citations.]" (*Tarkowski v. Lake County* (7th Cir. 1985) 775 F.2d 173, 175, citing, inter alia, *Excel Handbag Co. v. Edison Bros. Stores* (Fla.Dist.Ct.App. 1983) 428 So.2d 348, a case in which relief was sought in a state court against malicious prosecution in a federal court.)

However, an exception has been developed in the bankruptcy context, such that state law malicious prosecution claims are ordinarily not permitted to be based on an underlying bankruptcy matter that is within the exclusive jurisdiction of the bankruptcy court. This court outlined the development of this rule in *Pauletto, supra*, 64 Cal.App.4th at page 604. The exception to allowing state malicious prosecution actions to be based on underlying federal cases is based upon important policy considerations which have been summarized in cases such as *Gonzales v. Parks* (9th Cir. 1987) 830 F.2d 1033, 1035 (*Gonzales*), and *MSR Exploration, Ltd. v. Meridian Oil, Inc.* (9th Cir. 1996) 74 F.3d 910, 912 (*MSR Exploration*), as follows: First, "Congress has expressed its intent that bankruptcy matters be handled in a federal forum by placing bankruptcy jurisdiction exclusively in the [federal] district courts . . . ." (*MSR Exploration, supra*, 74 F.3d at p. 913.) Thus, "[s]tate courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one. Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating. [Citation.]" (*Gonzales, supra*, 830 F.2d at p. 1035.)

Second, the Bankruptcy Code shows Congress's legislative intent "to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike. While it is true that bankruptcy law makes reference to state law at many points, the adjustment of rights and duties within the bankruptcy process itself is uniquely and exclusively federal. It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the

bankruptcy process. [¶] Debtors' petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and innumerable other proceedings, would all lend themselves to claims of malicious prosecution. Those possibilities might gravely affect the already complicated processes of the bankruptcy court. [Citations.]" (*MSR Exploration, supra,* 74 F.3d at p. 914, fn. omitted.)

Third, a reason to make a finding of preemption is the need for uniformity in bankruptcy law. (*MSR Exploration, supra,* 74 F.3d at p. 915.)

All these factors for determining preemption questions are intended to prevent certain harms to the bankruptcy system. For example, it should be considered whether "allowance of such a claim conflicts with the Bankruptcy Code's overall scheme of remedies . . . ." (E.g., see Fed. Rules Bankr.Proc., rule 9011, (11 U.S.C.) [re: sanctions]; fn. 4, *ante.*) Next, it must be considered whether there is a threat in later state litigation to "interfere with the filings of claims by creditors and with other necessary actions that they, and others, must or might take within the confines of the bankruptcy process. Whether creditors should be deterred, and when, is a matter unique to the flow of the bankruptcy process itself—a matter solely within the hands of the federal courts. . . . Bankruptcy law does not exist solely for debtors. It is also for the benefit of creditors; it gives them a single forum where debts and priorities can be determined in an orderly manner . . . ." (*MSR Exploration, supra,* 74 F.3d at p. 916.)

### B

### *Case Authority Applying Rules*

The cases in which this exception has been applied have involved many different kinds of underlying bankruptcy proceedings. In *Gene R. Smith Corp. v. Terry's Tractor, Inc.* (1989) 209 Cal.App.3d 951, 952-953 [257 Cal.Rptr. 598] (*Smith*), a bankruptcy debtor brought a state court action for abuse of process and malicious prosecution based on the creditor-defendants' allegedly malicious petition under chapter 11 to place Smith in involuntary bankruptcy, and based on the joinders by creditors in that proceeding.

In *Idell v. Goodman* (1990) 224 Cal.App.3d 262, 265-266 [273 Cal.Rptr. 605] (*Idell*), the plaintiff's creditors brought an unsuccessful adversary proceeding in bankruptcy court under 11 United States Code section 727(a), alleging the plaintiff's debts should not be discharged. The plaintiff then sued the defendants in state court for malicious prosecution of that adversary proceeding. (*Idell, supra,* 224 Cal.App.3d at pp. 265-266.) In holding no

state court action could be maintained, the court in *Idell* stated: "The existence of federal sanctions for the filing of frivolous and malicious bankruptcy pleadings must be read as an implicit rejection of state court remedies. The mere possibility of being sued in tort in state court, with the potential for substantial damage awards, could deter persons from exercising their rights in bankruptcy. Thus, it is for Congress and the federal courts, not state courts, to decide what incentives and penalties shall be utilized in the bankruptcy process." (*Id.* at p. 271.)

In *MSR Exploration, supra,* 74 F.3d 910, footnote 2, the later state malicious prosecution action was brought against a creditor based on the creditor's allegedly malicious pursuit of a creditor's claims in the bankruptcy proceedings. (See 11 U.S.C. § 502 et seq. [referring to allowance of creditors' claims or interests].)

In *Pauletto, supra,* 64 Cal.App.4th at page 606, it was 11 United States Code section 523 adversary proceedings that were filed in bankruptcy court that were held not to support a later state malicious prosecution action. This court noted: "The distinctions between the various bankruptcy proceedings which could give rise to a malicious prosecution action are not important. The line of cases we follow, from *Gonzales* to *MSR Exploration, Ltd.,* make it clear that no authorized bankruptcy proceeding can properly support a state-law claim for malicious prosecution or abuse of process." (*Pauletto, supra,* 64 Cal.App.4th at p. 605.)

In *Ross v. Universal Studios Credit Union* (2002) 95 Cal.App.4th 537 [115 Cal.Rptr.2d 712] (*Ross*), the underlying case involved a judgment creditor who filed a complaint in the bankruptcy proceedings requesting a determination that its 1994 judgment against Ross, the bankruptcy petitioner, would be declared nondischargeable pursuant to 11 United States Code section 523(d). This underlying case was held not to support a state malicious prosecution action, because of the policies presuming the Bankruptcy Code provides adequate remedies for the resolution of any abuse that may occur in such proceeding and that otherwise, the jurisdiction of the bankruptcy court would be undercut.

In *Saks v. Parilla, Hubbard & Militzok* (1998) 67 Cal.App.4th 565 [79 Cal.Rptr.2d 120] (*Saks*), bankruptcy petitioner and counsel (creditors) initiated an adversary proceeding in the bankruptcy court to recover $1.5 million from a party, Saks, based on alternate theories of fraudulent conveyance (11 U.S.C. § 548) and preferential transfer (11 U.S.C. § 547). After Saks prevailed in the adversary proceeding, he filed a state malicious prosecution and abuse of process action against them, which was held preempted.

In *Saks, supra,* 67 Cal.App.4th 565, the court rejected an argument that preemption was unnecessary because Saks's malicious prosecution case was in state court and raised only state tort claims. It also rejected a claim that it was determinative whether the alleged misusers of the bankruptcy proceeding were debtors or creditors. The main issues that remained were whether the exclusive jurisdiction of the bankruptcy court would be invaded or that uniformity would be undercut. (*MSR Exploration, supra,* 74 F.3d at p. 915.) Further, the court in *Saks* concluded it made no difference that in the underlying case, the defendant creditors (now sued for malicious prosecution of the underlying case) could have either pursued their adversary proceeding in bankruptcy court, or could have pursued equivalent state claims of fraudulent conveyance or preferential transfer in superior court. The court in *Saks* found it determinative that once the petition for chapter 11 bankruptcy had been filed, the bankruptcy court had the ability to resolve all related issues of debts and priorities in an orderly manner, i.e., in the adversary proceedings in bankruptcy court. (*Saks, supra,* 67 Cal.App.4th at pp. 572-573.)

In *Glannon v. Garrett & Associates, Inc.* (Bankr. D.Kan. 2001) 261 B.R. 259, the federal district court ruled that the Bankruptcy Code permits no state law remedies (such as the plaintiff's malicious prosecution and abuse of process complaint in connection with an adversary proceeding and involuntary bankruptcy filing) for abuse of the bankruptcy provisions, in a case involving 11 United States Code section 303(i)(2), which authorizes sanctions for involuntary bankruptcy petitions filed in bad faith. The court found that the plaintiff's state law claims based upon the filing of the involuntary bankruptcy petition, filing of the adversary proceeding, and violation of the automatic stay, were all impliedly preempted by the Bankruptcy Code. (*Glannon v. Garrett & Associates, Inc., supra,* at p. 263.)

In summary, we note that all these cases disallowing a malicious prosecution state court action involved an underlying proceeding that was an authorized bankruptcy proceeding, i.e., one authorized by the federal law in the bankruptcy area. To review, in *Smith, supra,* 209 Cal.App.3d 951, the underlying proceeding was the defendants' allegedly malicious petition under chapter 11 to place Smith in involuntary bankruptcy, and the joinders by creditors in that proceeding. In *Idell, supra,* 224 Cal.App.3d 262, the underlying proceeding was brought under 11 United States Code section 523. In *MSR Exploration, supra,* 74 F.3d 910, the underlying proceeding was adjudicated pursuant to 11 United States Code section 502 et seq. In *Saks, supra,* 67 Cal.App.4th 565, the underlying proceeding was brought pursuant to 11 United States Code sections 547 and 548. In both *Ross, supra,* 95 Cal.App.4th 537 and *Pauletto, supra,* 64 Cal.App.4th 597, the underlying

proceeding was brought under 11 United States Code section 523. The issue before us is whether the underlying common law fraud proceeding in this case is sufficiently similar to those underlying matters to justify a finding of federal preemption.

C

*Contrasting Case Authority Finding No Preemption*

We find it instructive next to outline the authority in which an underlying unsuccessful federal action can provide support for a later state court malicious prosecution or enforcement action. For example, in *Hinduja v. Arco Products Co.* (9th Cir. 1996) 102 F.3d 987, 989-990 (*Hinduja*), there was a dispute over the enforceability of a settlement agreement arrived at in a bankruptcy proceeding. The court stated: "There is no reason to declare that the mere fact that a bankruptcy decree has issued requires that any and all further proceedings be in the bankruptcy court. In fact, the contrary has been held to be the case. [Citations.] Of course, there may be times when circumstances require that a claim related to bankruptcy proceedings must be brought in the bankruptcy court. *See, e.g. MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 916[, *supra*,] (malicious prosecution claim). Those circumstances are not presented in this case. This is not a case where a separate state action will interfere with the uniformity required in bankruptcy proceedings or with the control of the bankruptcy court over those proceedings. It is a simple matter of enforcing contract law and deciding claims arising out of actions which allegedly breached contracts."

In a Kansas case, *McShares, Inc. v. Barry* (1998) 266 Kan. 479 [970 P.2d 1005, 1012], it was held that although preemption occurs in malicious prosecution proceedings based on bankruptcy cases due to preemption of the field, that is not true in the context of antitrust law: "Federal antitrust law is comprised of not one comprehensive act, but rather several narrower statutory schemes that were passed at various times in response to various historical stimuli." The court ruled that Federal Rules of Civil Procedure, rule 11, (28 U.S.C.) would not bar the bringing of an independent action against the defendants and appellees for malicious prosecution in federal district court, and similarly, "the present state court action should not be dismissed on the ground that rule 11 is an exclusive remedy," because the entire field of antitrust has not been preempted by federal law and rule 11 is not an exclusive remedy. (*McShares, Inc. v. Barry, supra*, 970 P.2d at p. 1015.)

Similarly, in *Del Rio v. Jetton* (1997) 55 Cal.App.4th 30 [63 Cal.Rptr.2d 712], the court allowed a malicious prosecution action based on an unsuccessful underlying federal civil rights action to proceed in state court over an

argument that the federal attorney fees statute for civil rights cases, 42 United States Code section 1988, provided an exclusive remedy. The Court of Appeal pointed out that subjective bad faith is not required for an award of attorney fees under section 1988, whereas "[i]n contrast, a successful action for malicious prosecution in California requires proof not only that the underlying action was brought without probable cause, but also that it was initiated or continued with malice." (*Del Rio v. Jetton, supra,* 55 Cal.App.4th at p. 36.) There was no conflict between state and federal law that would mandate preemption: "Congress intended the fee-shifting provision in [42 U.S.C.] section 1988 to encourage plaintiffs to bring good faith civil rights actions, and to deter plaintiffs from bringing civil rights actions which lack foundation. A tort action for malicious prosecution against a plaintiff who brought a civil rights action without foundation, *and* with malice does not conflict with either of those purposes." (*Del Rio v. Jetton, supra,* 55 Cal.App.4th at pp. 36-37.)[8]

D

*Comparison of Companion Federal Proceeding*

Based on the judicially noticed materials supplied, we turn to the analysis of the bankruptcy court judge who dismissed the companion malicious prosecution action that Satten attempted to litigate in federal court, after this demurrer was sustained without leave to amend and the case dismissed. Although we are not bound by the bankruptcy court's observations made in connection with that ruling, we are not averse to considering the issue in light of comments made by one experienced in the field. Specifically, the court was considering Webb's motion to dismiss that federal bankruptcy adversary proceeding. The bankruptcy court allowed further briefing on the issue of its jurisdiction to hear a malicious prosecution case that was based on a state court lawsuit that did not involve the bankruptcy trustee or affect the administration of the bankruptcy matter. Eventually, the adversary

---

[8]In *R.L. LaRoche, Inc. v. Barnett Bank of South Florida, N.A.* (Fla.Dist.Ct.App. 1995) 661 So.2d 855, 857, the court held: "The controversy at the heart of this appeal is whether a circuit court in Florida has subject matter jurisdiction over a debtor's common law abuse of process and malicious prosecution claims against his creditor for filing in bad faith an involuntary petition for relief under section 303 of the Bankruptcy Code. Viewed from the opposite end of the tunnel, the question is whether the United States Bankruptcy Court has exclusive jurisdiction of such claims, thereby ousting our circuit court. We hold that our circuit court does have jurisdiction and reverse the dismissal of the claim." This case has been followed in Florida (*Mullin v. Orthwein* (Fla.Dist.Ct.App. 2000) 772 So.2d 30), but not elsewhere. Its reasoning does not appear to comport with the majority view on malicious prosecution cases that are based on underlying bankruptcy cases involving a federally based adversary or related proceeding.

proceeding was dismissed for lack of subject matter jurisdiction either directly as a core proceeding or on a "related to" basis. (28 U.S.C. §§ 157(b)(2), 1334(b).) However, the bankruptcy court rejected any reliance on the *MSR Exploration* theory that a bankruptcy debtor could not bring a state court malicious prosecution action based on an underlying bankruptcy proceeding, since Satten was not the debtor in bankruptcy, but instead sought recovery for another's malicious prosecution of a state court fraud action. The court did not believe Federal Rules of Bankruptcy Procedure, rule 9011 (11 U.S.C.) sanctions were an exclusive remedy if a state court fraud action were wrongly brought, so as to preclude a later malicious prosecution action. The court explained its reasoning in part as follows: "It is my view that *MSR* is not controlling in this situation because *MSR* was a debtor who then attempted to avail itself of the opportunity to seek malicious prosecution remedy. Where we have two third parties who square off against each other for circumstances that arose in the context of the bankruptcy case but seek to apply state law malicious prosecution, there [are] no peculiarities of bankruptcy law for a state court judge to have to apply in that context. It is the elements of a state law cause of action for malicious prosecution. It is this court's view that it probably had no subject matter jurisdiction in that context and there is no bankruptcy purpose that would be associated with dealing with that. [¶] The core question for purposes of whether or not I can entertain this proceeding is subject matter jurisdiction. I recognize the horns of the dilemma that puts Ms. Satten on and I was encouraged by the fact that there is a notice of appeal on the state side because maybe they have a chance to get it straightened out on review of that, I don't know. That will be up to the state court to decide. It would be a bizarre set of circumstances if the state court says we have no jurisdiction because of preemption and this court were to say I have no subject matter jurisdiction pursuant to 1334 and 157, therefore, there is no remedy, period. That would be unfortunate."

## III

### *Satten's Arguments and Webb's Response on Appeal*

To reiterate Satten's arguments as the plaintiff and appellant, she claims the underlying action is not of a character that would activate the policies that require a finding of exclusive federal jurisdiction due to implied preemption. She contends preemption is inappropriate here, because malicious prosecution is primarily a matter of state law, and the underlying proceeding can be evaluated in this context without impermissibly interfering with federal law, in particular the bankruptcy system and its sanctions authority.

She finds the history of the underlying action here, originating in state court, to render distinguishable the authority that broadly states, "no authorized bankruptcy proceeding can properly support a state-law claim for malicious prosecution or abuse of process." (*Pauletto, supra,* 64 Cal.App.4th at p. 605.) ▮ Of course, this and other case authority must be read in light of the rule that a case is not authority for a proposition not considered therein or an issue not presented by its own particular facts. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

▮ In response, Webb contends the reasoning shown in *Pauletto, supra,* 64 Cal.App.4th 597, and its predecessor cases, must apply here, because (1) this proceeding was conducted in bankruptcy court and thus amounts to an authorized bankruptcy proceeding; (2) in any case, Satten joined in the removal request and must be bound thereby; (3) as found by the bankruptcy court, this was a core proceeding under 28 United States Code section 157(b)(2)(A) or (O), because it concerned or affected the administration of the bankruptcy estate (see fn. 5, *ante*); (4) Satten's attorney at the summary judgment hearing showed she was aware of the available bankruptcy remedies under Federal Rules of Bankruptcy Procedure, rule 9011, (11 U.S.C.) such as a motion for sanctions, and that was the only available remedy if the Keenan fraud action were ultimately found to be ill-conceived, frivolous, or malicious.

IV

*Analysis: This Case Does Not Fit Within the Policies That Require Exclusive Bankruptcy Jurisdiction Based on Implied Preemption*

A

*Pleadings*

Turning to the pleadings in the case before us, Satten sets forth the history of the prior state court proceedings, the bankruptcy proceedings, and the settlement she entered into with the bankruptcy trustee concerning her claim in the Keenan bankruptcy. She then outlines the allegations of the underlying Keenan state court fraud complaint, which constituted a collateral attack on the settlement agreement.

Satten then sets forth in her complaint the favorable termination she obtained from the bankruptcy court of her summary judgment motion, along with the trustee's, which were ruled upon by the bankruptcy court as

follows: "[T]he crux of the [Keenan] complaint is that the Trustee and, to a limited extent, Satten, misrepresented facts to the Plaintiffs and to this Court in connection [with] the Trustee's acts to take over the Debtor's business and to settle the Satten claim. The Trustee has provided ample evidence that this is not the case. The Plaintiffs have, on the other hand, not provided a single shred of evidence which would support such allegations." The district court order affirming this bankruptcy court order stated that the complaint did not identify a single fraudulent act by Satten, and no admissible evidence of any fraudulent conduct on her part was presented by Keenan. These rulings by the federal court appear to apply only state law, not substantive bankruptcy rules and statutes, because that was all that was presented in the underlying common law fraud case brought to it by removal. (28 U.S.C. § 1452.)

Satten then makes the necessary allegations of the Keenans' lack of probable cause to institute the underlying fraud case, due to a lack of evidence of fraudulent conduct on Satten's part. She alleges that all her actions were performed under the supervision and approval of the bankruptcy court. Accordingly, she alleges Keenan acted maliciously in suing her for an improper motive and purpose (collaterally attacking the court-approved settlement), and in continuing to conduct frivolous litigation since 1994.

## B

### *Analysis*

We must analyze these allegations in light of the policies outlined above. First, as summarized in *MSR Exploration, supra,* 74 F.3d 910, we inquire if the exercise of state court jurisdiction "would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating." (*Gonzales, supra,* 830 F.2d at p. 1035.) Second, state court jurisdiction would not be proper to accomplish "the adjustment of rights and duties within the bankruptcy process itself," which should be uniquely and exclusively federal (e.g., debtors' petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and such other proceedings). (*MSR Exploration, supra,* 74 F.3d at p. 914.) Third, the preemption determination must recognize the need for uniformity in bankruptcy law. (*Id.* at pp. 914-915.)

These factors will assist us in determining the nature of the federal jurisdiction over Satten's malicious prosecution claims. This in turn will

depend on whether the jurisdiction over the underlying matter that was litigated in federal bankruptcy court was exclusively federal, or was instead concurrent or supplemental. (28 U.S.C. §§ 157(b)(2)(A), (O), 1334, 1367.) We first take note of the trial court's reliance on *In re DeLorean Motor Co., supra,* 155 B.R. 521, which stands for the rule that a state law malicious prosecution action arising out of a trustee's attorney's performance of official duties in a bankruptcy matter was a "core proceeding," such that it could not be litigated in state court. The issue actually presented in *DeLorean* was whether the bankruptcy court erred in determining that it should remand a state court action previously removed to its court, based on the doctrines of mandatory and discretionary abstention. (28 U.S.C. § 1334(c)(1), (2).) The appellate court ruled no such remand to state court was required and the matter could be decided in bankruptcy court. This is an entirely different scenario, because Satten is not claiming tortious conduct by a trustee's attorney, but instead a malicious filing outside of bankruptcy court by and against a third party.

In light of all the considerations outlined above, we must reject each of Webb's arguments in support of the demurrer ruling below. First, although the underlying fraud proceeding was ultimately resolved in bankruptcy court, it did not amount to an "authorized bankruptcy proceeding," because it was not grounded in a federal statutory provision, but rather represented a common law fraud action (removed for different reasons involving the trustee's participation). Our reference in *Pauletto, supra,* 64 Cal.App.4th 597, to the underlying case as an "authorized bankruptcy proceeding" was made in the factual context that the underlying case there was brought under 11 United States Code section 523. Although we said there that "the distinctions between the various bankruptcy proceedings which could give rise to a malicious prosecution action are not important," we made that statement in reference to adversary proceedings, etc. authorized by federal statutes, that are clearly core proceedings. (28 U.S.C. § 157(b)(2)(A), (O).) Here, the underlying case sounded in state common law fraud and tort. Thus, *Pauletto* is distinguishable, because a case is not authority for a proposition not considered therein. (*Ginns v. Savage, supra,* 61 Cal.2d 520, 524, fn. 2.)

Next, the jurisdiction question is considered de novo in this ruling on demurrer. (*MSR Exploration, supra,* 74 F.3d at p. 912.) The fact that Satten joined in the removal request does not mean she must be deemed bound by it for all purposes, such as to give the bankruptcy court exclusive jurisdiction where it would not otherwise exist. Our independent subject matter jurisdiction inquiry is not affected by the removal request, because removal was

otherwise proper due to the presence of the codefendant, the bankruptcy trustee, whose alleged activities were made in an official capacity so as to require exclusive jurisdiction in the bankruptcy court as a core proceeding. (See *In re DeLorean Motor Co., supra,* 155 B.R. at p. 525 [proper inquiry is whether a defendant is the functional equivalent of a trustee in bankruptcy due to the defendant's alleged actions].) However, as to Satten, no such official status was alleged regarding her claimed participation in the defrauding of Keenan. Instead, it appears she was brought along to bankruptcy court under 28 United States Code section 1367 supplemental jurisdiction, when the trustee made the initial removal request and when she joined it. (28 U.S.C. § 1452.) However, her role in the bankruptcy case was one step removed from that of the trustee, which makes her less centrally involved in the bankruptcy estate matters.

Similarly, the finding by the bankruptcy court that this was a core proceeding under 28 United States Code section 157(b)(2)(A), concerning the administration of the bankruptcy estate, is not dispositive when the allegations as to Satten are individually considered as outlined above. The same is true of the trial court's finding in ruling on the demurrer here, that the underlying case was a core proceeding, when we review the jurisdiction question de novo.

In summary, we believe the nature of the underlying fraud case, filed outside of bankruptcy, does not require or justify a finding that it was an authorized bankruptcy proceeding. It was not based in federal law, as were the underlying "[d]ebtors' petitions, creditors' claims, disputes over reorganization plans, disputes over discharge, and innumerable other proceedings," referred to in *MSR Exploration, supra,* 74 F.3d at page 914, as requiring later preemption of a subsequent malicious prosecution action. Here, state court jurisdiction over the malicious prosecution case that is founded upon the unsuccessful fraud allegations will not improperly accomplish "the adjustment of rights and duties within the bankruptcy process itself," which is uniquely and exclusively federal. Nor will it interfere with uniformity of application of bankruptcy law. (*Ibid.*)

In this regard, it is somewhat disingenuous of Webb to contend that there can be no state court jurisdiction of this malicious prosecution action, since his clients' underlying fraud action was commenced in state court. Under these circumstances, the state courts should be able to examine whether that state court filing on behalf of his client met the standards required for subsequent malicious prosecution relief. (*Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d 863.) Satten must have a day in court to decide her rights or remedies regarding malicious prosecution.

Further, even though Satten's attorney at the summary judgment hearing in bankruptcy court showed she was aware of the available bankruptcy remedies under Federal Rules of Bankruptcy Procedure, rule 9011 (11 U.S.C.), that does not demonstrate that those were the only remedies available for all time. Even if Satten could show Webb's frivolous filing of pleadings, etc. under the standards of rule 9011, that would be different than showing the elements of the tort of malicious prosecution, such as not only a favorable termination (not disputed), but also the lack of probable cause to sue or the initiation of the proceeding with malice. (*Sheldon Appel Co. v. Albert & Oliker, supra*, 47 Cal.3d at p. 871; see fn. 4, *ante*.)

Moreover, no waiver of any state law claims that were otherwise available occurred through Satten's failure to pursue bankruptcy sanctions, since the matter was only in bankruptcy court as to Satten under the supplemental jurisdiction or "related to" rationales. (28 U.S.C. §§ 1334(b), 1367.) The prosecution of this action will not create any impermissible state court interference with the existence of federal sanctions for the filing of frivolous and malicious bankruptcy pleadings, such as was disallowed by *Idell, supra*, 224 Cal.App.3d at page 271: "The mere possibility of being sued in tort in state court, with the potential for substantial damage awards, could deter persons from exercising their rights in bankruptcy. Thus, it is for Congress and the federal courts, not state courts, to decide what incentives and penalties shall be utilized in the bankruptcy process." (See also *McShares, Inc. v. Barry, supra*, 970 P.2d at p. 1012.) We do not believe the underlying Keenan common law fraud case amounted to a protected exercise of his rights in bankruptcy, such that no later state court malicious prosecution filing may be premised upon it.

Further, as stated in *Hinduja, supra*, 102 F.3d at page 990, "This is not a case where a separate state action will interfere with the uniformity required in bankruptcy proceedings or with the control of the bankruptcy court over those proceedings. It is a simple matter of enforcing [state] law and deciding claims arising out of actions which allegedly [violated state law]." A malicious prosecution case based on an underlying common law fraud action, even if the underlying action was removed to bankruptcy court and then resolved there on state law grounds, does not raise the concerns that require a federal preemption finding.

For all the above reasons, the demurrer was incorrectly sustained and the order is reversed and the matter remanded for further proceedings as appropriate.

## DISPOSITION

Reversed. Costs are awarded to Satten.

Kremer, P. J., and Nares, J., concurred.

A petition for a rehearing was denied July 9, 2002, and respondents' petition for review by the Suprme Court was denied October 2, 2002. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.